# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re A.P.*, 2012 IL App (3d) 110191

---

| | |
|---|---|
| Appellate Court Caption | *In re* A.P. and J.P., Minors (The People of the State of Illinois, Petitioner-Appellee, v. Lisa P., Respondent-Appellant). |
| District & No. | Third District<br>Docket No. 3-11-0191 |
| Rule 23 Order filed<br>Motion to publish allowed<br>Opinion filed | December 12, 2011<br><br>January 20, 2012<br>January 20, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's adjudication that respondent's children were neglected due to an environment injurious to their welfare was reversed, notwithstanding the fact that the youngest child suffered a burn on his face from hot water while respondent's boyfriend was preparing the child for a bath, since the boyfriend's actions in leaving the child in the tub with the water running were unintentional and not wilful, respondent had no previous reason to suspect her boyfriend would be neglectful in caring for her children, and there was no indication she allowed him to be around her children after the incident or that she maintained a relationship with him, and furthermore, the trial court erred in admitting records that were not made in the regular course of the business of a hospital or agency but, rather, were prepared in anticipation of litigation. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Peoria County, Nos. 10-JA-338, 10-JA-339; the Hon. Mark E. Gilles, Judge, presiding. |
| | |
| Judgment | Reversed. |
| | |
| Counsel on Appeal | Louis P. Milot, of Peoria, for appellant. |
| | Jerry Brady, State's Attorney, of Peoria (Terry A. Mertel and Judith Z. Kelly, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| | |
| Panel | JUSTICE McDADE delivered the judgment of the court, with opinion. |
| | Justices O'Brien and Wright concurred in the judgment and opinion. |

**OPINION**

¶ 1    Following an adjudication hearing, the trial court found that A.P. (age 3) and J.P. (age 7) were neglected due to an environment injurious to their welfare (705 ILCS 405/2-3(1)(b) (West 2010)). At the subsequent dispositional hearing, the trial court found that the respondent, Lisa P., was a fit parent and closed the minors' cases. On appeal, the respondent argues that: (1) the trial court's finding that A.P. and J.P. were neglected minors was against the manifest weight of the evidence; and (2) the trial court erred in denying her motion *in limine* and admitting letters and reports from the Pediatric Resource Center (PRC). We reverse.

¶ 2                                    FACTS
¶ 3    On November 23, 2010, the State filed a juvenile petition alleging that A.P. was abused because, on August 17, 2010, the respondent's boyfriend inflicted physical injury upon A.P., by other than accidental means, in that he burned A.P. with hot water, causing second-degree burns. The State also alleged that both A.P. and J.P. were neglected in that their environment was injurious to their welfare because: (1) the respondent's boyfriend had burned A.P.'s face with hot water by other than accidental means; (2) the burns to A.P.'s face could not have occurred absent abuse or neglect on the part of the boyfriend; and (3) the boyfriend initially lied to police but later admitted that he had left the minors unsupervised with the bathwater running while he went outside to smoke a cigarette. In her answer to the petition, the

respondent stipulated that her boyfriend initially lied but later admitted to leaving the minors unsupervised with the bathwater running.

¶ 4    Prior to the adjudication hearing, the respondent filed a motion *in limine* to exclude from evidence records from the PRC. The respondent argued that the records were not made in the regular course of business and were being introduced as a substitute for expert medical testimony. The respondent contended that the records were those of a consulting physician prepared in anticipation of litigation, which contained opinions or conclusions as to the source of injury to A.P. The trial court denied the motion *in limine* and admitted the PRC records into evidence.

¶ 5    According to the PRC records, the Department of Children and Family Services' (DCFS) investigatory notes indicated that: (1) the respondent had stated that she was on her way home from a doctor's appointment when her boyfriend called and told her that A.P. had burned his face in the bathtub; (2) the boyfriend told the respondent that the incident occurred while he was looking at himself in the mirror; (3) the respondent arrived 10 minutes later and took A.P. to the hospital; (4) DCFS investigators were unable to confirm the temperature of the water in the boyfriend's home; (5) the respondent's boyfriend was caring for his own 5- and 10-year-old children, in addition to A.P. and J.P., at the time of the incident; (6) the mother of the boyfriend's 5-year-old child indicated that he was a good parent; (7) the boyfriend initially reported being in the bathroom at the time of the incident but later reported being in the den at the time of the incident, and then changed his story again to indicate that he was in front of the house when the incident occurred; (8) the boyfriend initially reported that the other children were in the basement at the time of the incident but later indicated that two of the other minors were in the den watching cartoons when A.P. was injured; (9) the boyfriend lied about the incident because he did not want the respondent to be mad at him; (10) when the incident occurred, the boyfriend heard A.P. scream, so he ran to the bathroom and found A.P. standing by the bathtub's faucet; (11) the respondent had previously spoken to the boyfriend about the water in her home getting too hot when they washed their hands; (12) the boyfriend's 10-year-old child reported that he was in the basement and the other children were in the den when the incident happened; and (13) after the incident, the 10-year-old child observed the respondent's boyfriend applying ice to A.P.'s face. A time-temperature exposure chart in the PRC records indicated that water at a temperature of 140 degrees or higher would scald a child's skin in one second or less.

¶ 6    The PRC records contained a report by Dr. Channing Petrak, in which she opined that A.P.'s burns were "most consistent with inflicted burns due to child physical abuse." Petrak based her opinion upon the fact that A.P. had no burns on his hands or arms, which would have been expected because "children put their hands out to catch themselves when they fall." Petrak noted that based on the measurements of the bathtub and A.P.'s height, "it is not probable that [A.P.] would have been able to fall and catch himself in a way that only his left side of his face, ear and back of his neck were burned." Petrak further noted that if A.P. had tried to reach for toys "the faucet would have been on his right side, not his left," and if A.P. had his head turned "to get only the left side of his face under the faucet, then it would be expected that the runoff of the water would have burned his left shoulder" and A.P. did not have burns on his left shoulder.

¶ 7        The State also entered A.P.'s hospital records into evidence. A.P.'s emergency room (ER) records for August 17, 2010, indicated that the respondent reported to ER staff that her boyfriend was running bathwater when A.P. ran into the bathroom to get a toy and slipped and fell head first into the bathtub. The ER records indicated that A.P. had first- and second-degree scald burns to 8% of the left side of his head. The ER records noted that A.P.'s maternal grandmother stated that A.P. had previous visits to the ER for falls and cuts to his face, with the respondent's boyfriend having been involved.

¶ 8        A.P.'s medical records, from July 28, 2009, and January 2, 2010, indicated that A.P. incurred a laceration to his lower lip after he slipped from the side of a bed and struck his lip on the bedrail, and he incurred a laceration to the left side of his forehead after he ran into a desk drawer at the respondent's gym. There was no indication that the respondent's boyfriend was involved in either of the previous incidents.

¶ 9        The respondent testified that on August 17, 2010, her boyfriend was babysitting the minors while she went to a doctor's appointment. After her appointment, the respondent was returning to her boyfriend's home when he called and said that A.P. had burned his face in the bathtub. The respondent arrived at her boyfriend's home 10 minutes later and observed that A.P. had burns on the left half of his face that were "like a sunburn" and looked "superficial" on the "outside of his skin." The respondent immediately transported A.P. to the ER.

¶ 10       The respondent testified that there had never been any incidents of abuse involving her boyfriend and the minors. She testified that A.P. had been taken to the hospital on two previous occasions. She described the first incident as occurring when A.P. was one year old, when he slipped off a bedrail and split his lip open at the home of the minors' maternal grandmother. She described the second incident as occurring when A.P. was almost two years old, when he fell into a desk drawer and split his forehead open at her gym.

¶ 11       At the conclusion of the adjudication hearing, the trial court stated that it could not find by a preponderance of the evidence that A.P.'s injuries were caused by abuse. The trial court found that because the respondent's boyfriend lied about what had occurred, it was "more likely than not [that] he was neglectful in watching [A.P.]" and "he was trying to defend himself with regard to his neglectful actions." The trial court found that the minors were neglected due to an injurious environment because the respondent's boyfriend was a "big part" of their environment if he was giving them baths.

¶ 12       At the subsequent dispositional hearing, the trial court found that the respondent was a fit parent and ordered that the minors' cases be closed. The respondent appealed from the finding of neglect due to an injurious environment.

¶ 13                                    ANALYSIS

¶ 14       On appeal, the respondent contends that the trial court erred in admitting the PRC records into evidence and adjudicating the minors neglected. We agree.

¶ 15       Initially, we address respondent's argument regarding the admission of the PRC records. The State argues that the PRC records were properly admitted as a business record under section 2-18(4)(a) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-18(4)(a) (West

-4-

2010)). Section 2-18(4)(a) of the Act provides:

"Any writing, record, photograph, or x-ray of any hospital or public or private agency, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any condition, act, transaction, occurrence or event relating to a minor in an abuse or neglect or dependency proceeding, shall be admissible in evidence as proof of that condition, act, transaction, occurrence or event, *if the court finds that the document was made in the regular course of the business of the hospital or agency* and that it was in the regular course of such business to make it, at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter." (Emphasis added.) 705 ILCS 405/2-18(4)(a) (West 2010).

¶ 16 In this case, A.P. incurred a burn on August 17, 2010. He was immediately taken to the local emergency room and then transported to a burn unit at Memorial Medical Center in Springfield, Illinois. He was discharged the following day, August 18. The same day of his discharge from the hospital, DCFS referred A.P. to the PRC for an examination. On August 19, 2010, A.P. was examined at the PRC as the result of the referral from DCFS. Dr. Channing Petrak examined A.P. and reviewed DCFS notes, photos taken by DCFS, and A.P.'s medical records. We note that the PRC examination was not part of A.P.'s follow-up medical care, as he was seen in follow-up at the Memorial Medical Center outpatient burn center on August 24, 2010, with the examination notes indicating his burns had healed well. It was not until three months later, on November 24, 2010, that Petrak issued a report and opined that A.P.'s burns were "most consistent with inflicted burns due to child physical abuse." The PRC records and Petrak's report were not made in the regular course of the business of a hospital or agency but rather appear to have been prepared in anticipation of litigation. Thus, the trial court abused its discretion by admitting them into evidence.

¶ 17 Next, we turn to the issue of whether the trial court erred in finding that the minors were neglected. A proceeding for adjudication of wardship is a significant intrusion into the sanctity of the family which should not be undertaken lightly. *In re Arthur H.*, 212 Ill. 2d 441 (2004). It is the burden of the State to prove its allegations of neglect by a preponderance of the evidence, meaning that the State must establish that the allegations of neglect are more probably true than not. *Arthur H.*, 212 Ill. 2d 441. On appeal, a trial court's finding of neglect will not be reversed unless it was against the manifest weight of the evidence. *In re Faith B.*, 216 Ill. 2d 1 (2005). A court's ruling is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *Faith B.*, 216 Ill. 2d 1.

¶ 18 Generally, neglect is the failure to exercise the care that circumstances justly demand and encompasses both wilful and unintentional disregard of a duty. *In re N.B.*, 191 Ill. 2d 338 (2000). Section 2-3 of the Act provides that a "neglected" minor includes "any minor under 18 years of age whose environment is injurious to his or her welfare." 705 ILCS 405/2-3(1)(b) (West 2010). An injurious environment does not have a fixed definition, requiring each case to be analyzed under its own unique circumstances. *Arthur H.*, 212 Ill. 2d at 463. In general, however, the term "injurious environment" means a breach of a parent's duty to ensure a safe and nurturing shelter for his or her children. *Arthur H.*, 212 Ill. 2d at 463.

¶ 19 Here, the trial court determined that the boyfriend's neglectful actions leading to A.P.'s

severe injuries and the fact that the boyfriend had lied about the incident was indicative of an injurious environment. In defining a neglected child in the Act, the legislature focused on the status of the child, giving consideration to the acts or omissions of the child's parents or other individual responsible for the welfare of the child. *Arthur H.*, 212 Ill. 2d at 462 (citing 705 ILCS 405/2-3(1)(a) through (1)(d) (West 2000)). Only after the trial court has adjudicated a minor neglected does the court consider the actions of the parents. *Arthur*, 212 Ill. 2d at 466-67; see 705 ILCS 405/2-21(1) (West 2010). Therefore, the only question to be resolved at an adjudicatory hearing is whether the child is neglected and not whether the parent is neglectful. *Arthur H.*, 212 Ill. 2d at 466-67.

¶ 20 The trial court adjudicated the minors to be neglected due to an environment injurious to their welfare, even though the respondent had no previous reason to suspect that her boyfriend would act neglectfully in caring for them or his own children. Also, there is no indication that the respondent allowed her boyfriend to be around the minors after the incident or that she maintained any type of relationship with him. Effectively, the trial court's determination was a *per se* finding of an injurious environment based upon the fact that A.P. was injured due to the boyfriend's neglectful actions. As a matter of common sense, any mishap or injury incurred by a minor can be attributed to some neglectful action on the part of a caregiver. Such a broad definition of a "neglected minor" contradicts case law, which has established that neglect is to be determined on a case-by-case basis. See *In re M.Z.*, 294 Ill. App. 3d 581 (1998). It is clear from the record that the respondent's failure to provide a safe environment for A.P. was unintentional and not wilful. "[A]ny allegation of unintentional disregard based on a baby-sitter's inappropriateness as a caregiver cannot be deemed *per se* neglect; the State must prove by a preponderance of the evidence the neglect charged ***." *M.Z.*, 294 Ill. App. 3d at 599.

¶ 21 We must consider all the surrounding circumstances to determine whether the minors' environment was injurious to their welfare.[1] The evidence showed that the respondent left A.P. and J.P. in the care of her boyfriend while she went to a doctor's appointment. As previously noted, there was no indication that the respondent's boyfriend could not provide a safe and nurturing shelter for the duration of the respondent's doctor appointment. There was no indication that the respondent's boyfriend ever harmed the minors in the past. Hospital records and the respondent's testimony established that A.P.'s prior two injuries were accidents in which the respondent's boyfriend had no involvement.

¶ 22 As for the incident at hand, it occurred when respondent's boyfriend left the minors unsupervised with bathwater running. Although there was some speculation as to what may

---

[1]The State's petition did not allege neglect based upon inadequate supervision pursuant to section 2-3(1)(d) of the Act, which enumerates 15 factors to be considered in determining whether a minor was left with inadequate supervision. See 705 ILCS 405/2-3(1) (West 2010). Therefore, we review this case solely to determine whether the trial court's finding of neglect based upon an injurious environment was supported by the evidence. See *In re J.B.*, 312 Ill. App. 3d 1140 (2000) (providing that the State's failure to amend the petition to include allegations of inadequate supervision barred the trial court from entering a finding on any claims other than those alleged in the petition).

have occurred, there were no witnesses to the incident, and the trial court found that A.P.'s injuries were not the result of abuse. After A.P. was injured, the boyfriend immediately aided A.P. and called the respondent. The respondent arrived within 10 minutes and immediately brought A.P. to the ER. Therefore, the circumstances show that the respondent and her boyfriend reacted appropriately to the incident, providing immediate aid and medical care to A.P.

¶ 23　　　Additionally, the trial court's finding that respondent's boyfriend was a "big part" of the minors' environment because he gave them baths on the day of the incident was merely speculative. Although the incident occurred in the boyfriend's home, there was no evidence that the minors lived with him or of what type of involvement they may otherwise have had with him. Also, there was no indication that the minors were left in the boyfriend's care after the incident. In viewing all the circumstances surrounding this case, we conclude that the trial court's finding of neglect due to an injurious environment was against the manifest weight of the evidence.

¶ 24　　　　　　　　　　　　　　　　CONCLUSION

¶ 25　　　For the foregoing reasons, the judgment of the Peoria County circuit court finding A.P. and J.P. to be neglected due to an injurious environment is reversed.

¶ 26　　　Reversed.