2024 IL App (1st) 221700-U

No. 1-22-1700

Third Division
January 17, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | |
|---|---|
| *In re* A.W., Zya.T., Zah.T., and Zay.S., Minors | ) Appeal from the Circuit Court ) of Cook County. ) |
| (The People of the State of Illinois,     Petitioner-Appellee, | ) Nos.   18 JA 00881 )          18 JA 00882 )          18 JA 00883 |
| v. | )          18 JA 00884 ) |
| S.T.,     Respondent-Appellant). | ) The Honorable ) Andrea M. Buford, ) Judge Presiding. |

PRESIDING JUSTICE REYES delivered the judgment of the court.
Justices Lampkin and Van Tine concurred in the judgment.

**ORDER**

¶ 1    *Held:* The juvenile court's adjudication orders are affirmed, where the evidence demonstrated that the minors were abused and neglected, and any evidentiary error was harmless. At the request of the parties, the cause is remanded for the limited purpose of correcting a scrivener's error contained in the adjudication orders.

¶ 2    After a hearing, minors A.W., Zya.T., Zah.T., and Zay.S. were adjudicated wards of the court due to abuse and neglect by their mother, respondent S.T. (respondent). On appeal, respondent challenges only the adjudication findings as to her older two children, A.W. and Zya.T., claiming that the juvenile court's adjudication order relied on improperly-admitted

evidence and that, absent such evidence, the State did not establish that the children were abused or neglected. For the reasons that follow, we affirm the juvenile court's adjudication order but, as requested by the parties, remand the cause for the limited purpose of correcting a scrivener's error in its adjudication orders.

¶ 3                                                    BACKGROUND

¶ 4        Respondent is the mother of four children: a daughter, A.W., who was nearly eight years old at the time of the incident giving rise to the instant proceedings; and three sons, five-year-old Zya.T., four-year-old Zah.T., and two-year-old Zay.S. Respondent was in a relationship with J.S., the father of her youngest son, at the time; the fathers of the other children were listed as "unknown" on the adjudication petitions and neither J.S. nor the fathers of her other children are parties to this appeal.

¶ 5        On September 11, 2018, the State filed petitions for adjudication of wardship asking for each minor to be adjudicated a ward of the court; the State also filed motions for temporary custody of each minor on the same day. In the adjudication petitions, the State alleged that each minor was neglected due to an injurious environment under section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2016)) and was abused with a substantial risk of physical injury under section 2-3(2)(ii) of the Juvenile Court Act (705 ILCS 405/2-3(2)(ii) (West 2016)). With respect to Zah.T. and Zay.S., the two youngest children, the State also alleged that each minor was neglected under section 2-3(1)(d) of the Juvenile Court Act (705 ILCS 405/2-3(1)(d) (West 2016)), as he was a minor under age 14 whose parent left him without supervision for an unreasonable period of time.

¶ 6        The facts underlying all claims were the same. According to the petitions, respondent had two prior indicated reports for "cuts, welts and bruises" and "inadequate supervision."

Respondent had also admitted to recent incidents of domestic violence with J.S. while the children were present and, on June 24, 2018, the two youngest children were found home alone following an incident of domestic violence. While J.S. denied domestic violence, he admitted to breaking respondent's telephone. Following an initial investigation in February 2018, intact family services were offered, but respondent failed to participate in and/or complete the services, which included mental health treatment and domestic violence counseling.

¶ 7 On the same day, based on the allegations contained in the adjudication petitions, the juvenile court found probable cause that the minors were neglected, abused, and dependent and that immediate and urgent necessity existed to support their removal from the home. The court granted temporary custody of all four minors to the Department of Children and Family Services (DCFS) guardianship administrator.

¶ 8 The parties appeared before the juvenile court for an adjudication hearing on February 19, 2021. Telanee Smith, a DCFS investigator, testified that she was assigned to investigate a "C Sequence" allegation of inadequate supervision on June 25, 2018. In the course of her investigation, she learned that respondent had a prior indicated report for cuts, welts, and bruises and abrasions. Smith spoke with respondent in the presence of an intact worker on the day she was assigned the case, and respondent reported to Smith that J.S. had been present inside respondent's home and grew "upset" when she asked him to leave. The two had "a little tussel [*sic*]," and J.S. took her phone. Respondent left the home to stay with her sister. While she denied leaving the younger children—then ages two and four—home alone, respondent informed Smith that J.S. also left the home after the altercation, believing respondent had contacted the police. Respondent denied any history of domestic violence between her and J.S., but told Smith that J.S. had "kicked down her door" three months earlier.

¶ 9          On the same day, Smith spoke with J.S., who admitted that he had been arguing with respondent and had taken, and broken, her phone; according to J.S., they were arguing about respondent's failure to engage in services. J.S. further admitted to leaving the home after their argument, but Smith testified that both J.S. and respondent stated that the other was still in the home when they left. J.S. also denied a history of domestic violence between him and respondent.

¶ 10         The parties also stipulated to the testimony of Officer Emily Campbell, who would testify that she responded to a call at respondent's home on or about June 22, 2018. When she arrived at the home, she discovered the two youngest children[1] unattended inside the residence.

¶ 11         As the final portion of its case in chief, the State sought to admit two exhibits into evidence. People's Exhibit 1 was a sentencing order and criminal disposition sheet in a prior misdemeanor case against respondent. Respondent's counsel objected to the admission of the exhibit, arguing that the documents were hearsay and did not fall within any exception to the hearsay rule, as the conviction was only for a misdemeanor. People's Exhibit 2 consisted of the respondent's records from One Hope United, the agency which provided intact family services. Respondent's counsel again objected, contending that the documents contained an "improper delegation," as they were not signed by the head of the agency but instead were signed by the head of "Intact Family Services." The juvenile court overruled both objections and admitted the exhibits into evidence.

---

[1] As discussed further below, there are several places in the record, including in Officer Campbell's stipulation and in the adjudication orders, in which the children at the home are identified as Zay.S. and Zya.T. The parties all agree, however, that it was Zay.S. and *Zah.T.*, the two youngest children, who were discovered at home alone.

¶ 12    As noted, People's Exhibit 1 was a sentencing order and criminal disposition sheet, which established that, in September 2018, respondent had been sentenced to 24 months of probation for endangering the life or health of a child, pursuant to section 12C-5(a) of the Criminal Code of 2012 (720 ILCS 5/12C-5(a) (West 2016)), as well as being ordered to attend anger management and parenting classes.

¶ 13    People's Exhibit 2, the records from One Hope United, established that respondent's case first came to the attention of DCFS in February 2018, when police responded to a call reporting a " 'commotion' " and expressing concern for a child. Zya.T., who was five years old at the time, was found to have "marks and welts" on his abdomen and back, which he reported were the result of respondent "hitting" him. Respondent was taken into custody, while Zya.T. was taken to the hospital to be evaluated; the other children did not have any visible marks or injuries. Zya.T.'s injuries were consistent with being struck with an object. In an interview with a DCFS worker, A.W. reported that Zya.T. had been "running around and fighting with their younger brother"; A.W. informed respondent of the misbehavior, as she had previously been punished for "not telling" when she remained silent. A.W. observed respondent strike Zya.T. with an extension cord, then respondent ordered Zah.T. to retrieve a belt and struck Zya.T. with the belt, as well. A.W. reported that respondent had struck her and her brothers in the past. In his interview with the DCFS worker, Zya.T. confirmed A.W.'s account, stating that he had been fighting with his brother when respondent became angry with him and began striking him with an extension cord and a belt. Zya.T. further reported that respondent had struck him and his siblings with a belt in the past.

¶ 14    Respondent did not present any evidence and, after hearing arguments from the parties, the juvenile court found that the State had met its burden of proving neglect due to an injurious

environment with respect to all four minors, neglect due to being left home alone with respect to the two youngest minors, and abuse due to a substantial risk of physical injury with respect to all four minors. The juvenile court found that at the time of the incident, there was an open intact case and respondent had a prior indicated report. The juvenile court further found that respondent and J.S. had a history of domestic violence, although both denied it, and that both left the home after a dispute, leaving a two-year-old and a four-year-old child home alone. Accordingly, the juvenile court entered adjudication orders finding each minor neglected due to an injurious environment under section 2-3(1)(b) of the Juvenile Court Act and abused due to a substantial risk of physical injury under section 2-3(2)(ii) of the Juvenile Court Act, as "parents were involved in a dispute and left the home, leaving minors [Zah.T.] and [Zay.S.] alone. Mother has prior indicated report for cuts/welts/bruises." The adjudication orders for Zya.T. and Zay.S. also included findings that each minor was neglected due to being a minor under age 14 who was left without supervision for an unreasonable period of time under section 2-3(1)(d) of the Juvenile Court Act.

¶ 15    On September 28, 2022, after a dispositional hearing, the juvenile court entered dispositional order finding it in each minor's best interest to make him or her a ward of the court and finding respondent unwilling and unable for some reason other than financial circumstances alone to care for, protect, train, and discipline the minors.[2] We granted respondent leave to file a late notice of appeal, and this appeal follows.

---

[2] The court also found the minors' fathers unwilling and unable for some reason other than financial circumstances alone to care for, protect, train, or discipline them.

¶ 16                                              ANALYSIS

¶ 17        Prior to discussing respondent's claims on appeal, we briefly address the timeliness of our decision. This case is designated as "accelerated" pursuant to Illinois Supreme Court Rule 311 (eff. July 1, 2018), and we are required to issue our decision within 150 days after the filing of the notice of appeal in such cases, except where good cause is shown. In this case, while the notice of appeal was filed in November 2022, multiple extensions of time were requested by the parties. Accordingly, we find good cause for issuing our decision after the 150-day deadline. See *In re J.S.*, 2020 IL App (1st) 191119, ¶ 36 (finding good cause for issuing decision after deadline where there were extensions of time requested by the parties); *In re Zariyah A.*, 2017 IL App (1st) 170971, ¶ 69 (finding good cause for issuing decision after deadline where there were multiple extensions of time requested by the parties, among other procedural delays).

¶ 18        Turning to the merits of her appeal, respondent challenges only the adjudication findings as to her older two children, A.W. and Zya.T.; she does not challenge the findings as to the younger children, nor does she challenge the court's dispositional order. "A proceeding for adjudication of wardship 'represents a significant intrusion into the sanctity of the family which should not be undertaken lightly.' " *In re Arthur H.*, 212 Ill. 2d 441, 463 (2004) (quoting *In re Harpman*, 134 Ill. App. 3d 393, 396-97 (1985)). It is the State's burden to prove allegations of neglect or abuse by a preponderance of the evidence. *In re A.P.*, 2012 IL 113875, ¶ 17.

¶ 19        Generally, a reviewing court will reverse the juvenile court's determination only if the factual findings are against the manifest weight of the evidence or if the court abused its discretion by selecting an inappropriate dispositional order. *In re Kamesha J.*, 364 Ill. App. 3d 785, 795 (2006); see also *In re Malik B.-N.*, 2012 IL App (1st) 121706, ¶ 56; *In re J.C.*, 396

Ill. App. 3d 1050, 1060 (2009); *In re Gabriel E.*, 372 Ill. App. 3d 817, 828 (2007). As the juvenile court is in a superior position to assess the credibility of witnesses and weigh the evidence, we will not overturn its findings "merely because the reviewing court may have reached a different decision." *In re April C.*, 326 Ill. App. 3d 245, 257 (2001) (citing *In re Lakita B.*, 297 Ill. App. 3d 985, 994 (1998)).

¶ 20    In this case, respondent contends that the juvenile court erred in admitting the State's exhibits into evidence at the adjudication hearing and that, without these exhibits, the evidence presented at the adjudication hearing was insufficient to support the juvenile court's findings with respect to A.W. and Zya.T. The rules of evidence applicable to civil proceedings are applicable to proceedings under the Juvenile Court Act. 705 ILCS 405/2-18(1) (West 2016). Here, respondent claims that both of the State's exhibits constitute inadmissible hearsay and, therefore, the juvenile court erred in admitting them into evidence.

¶ 21    Hearsay is an out-of-court statement made by a declarant that is offered to prove the truth of the matter asserted. Ill. R. Evid. 801(c) (eff. Oct. 15, 2015). Hearsay evidence is generally inadmissible in adjudicatory proceedings, unless an exception applies. *In re Chance H.*, 2019 IL App (1st) 180053, ¶ 49; *In re Zariyah A.*, 2017 IL App (1st) 170971, ¶ 88.

¶ 22    The first exhibit challenged by respondent, People's Exhibit 1, consisted of a sentencing order and criminal disposition sheet, which established that, in September 2018, respondent had been sentenced to 24 months of probation for endangering the life or health of a child, as well as being ordered to attend anger management and parenting classes. While certain judgments of conviction are admissible as hearsay exceptions, such judgments are limited to judgments "adjudging a person guilty of a crime punishable by death or imprisonment in excess of one year." Ill. R. Evid. 803(22) (eff. Sept. 28, 2018). The crime of endangering the

life or health of a child is a misdemeanor and so does not fall within this exception, as the State acknowledges in its brief. See 720 ILCS 5/12C-5(d) (West 2016). Consequently, People's Exhibit 1 was erroneously admitted by the juvenile court. As explained below, however, the admission of such evidence was harmless, as there was no prejudice to respondent where the juvenile court did not rely on this document and there was sufficient evidence in the record to support the court's findings even without the exhibit. See *In re A.B.*, 308 Ill. App. 3d 227, 237 (1999) (even where juvenile court erroneously allowed certain witness testimony, such error did not prejudice the respondent where the evidence was sufficient to establish at least one ground of parental unfitness).

¶ 23    The second exhibit, People's Exhibit 2, consisted of records from One Hope United, the agency providing intact services to respondent's family. Section 2-18(4)(a) of the Juvenile Court Act provides that such documents are admissible in adjudicatory proceedings, so long as the juvenile court finds that the document was made in the regular course of business at the time of the events at issue, or within a reasonable time thereafter. 705 ILCS 405/2-18(4)(a) (West 2016). Section 2-18(4)(a) further provides:

> "A certification by the head or responsible employee of the hospital or agency that the writing, record, photograph or x-ray is the full and complete record of the condition, act, transaction, occurrence or event and that it satisfied the conditions of this paragraph shall be prima facie evidence of the facts contained in such certification. A certification by someone other than the head of the hospital or agency shall be accompanied by a photocopy of a delegation of authority signed by both the head of the hospital or agency and by such other employee. All other circumstances of the making of the memorandum, record, photograph or x-ray, including lack of personal knowledge of

the maker, may be proved to affect the weight to be accorded such evidence, but shall not affect its admissibility." *Id.* In this case, respondent contends that People's Exhibit 2 was inadmissible, as it did not contain an appropriate delegation of authority.

¶ 24 The certification contained in the record on appeal is signed by an individual identified as "Case Manager Assistant." As the certification was signed by "someone other than the head of the hospital or agency," it required a delegation of authority. *Id.* The delegation of authority form contained in the record on appeal is signed by an individual occupying the role of senior supervisor for the northern region of One Hope United, who is identified as the "head of intact family services," and the case manager assistant signed an acceptance of the delegation of authority at the bottom of the page. Respondent claims that this delegation was insufficient, as the "head of intact family services" is not the "head of the hospital or agency" (*id.*) as required by section 2-18(4)(a). We do not find this argument persuasive.

¶ 25 As both the State and the minors' counsel note, section 2-18(4)(a) does not define either the term "head" or "agency." An " '[a]gency' " is, however, defined in section 1-3 of the Juvenile Court Act as "a public or private child care facility legally authorized or licensed by this State for placement or institutional care or for both placement and institutional care." 705 ILCS 405/1-3(3) (West 2016). There is no dispute that One Hope United is considered an "agency" under the Juvenile Court Act. The question at issue, then, is whether the "head" of the relevant division of the larger organization may be considered the "head of the *** agency" (*id.* § 2-18(4)(a)) for purposes of section 2-18(4)(a). We believe it can.

¶ 26 Section 1-2 of the Juvenile Court Act instructs that, in all proceedings, "the court may direct the course thereof so as promptly to ascertain the jurisdictional facts and fully to gather

information bearing upon the current condition and future welfare of persons subject to this [Juvenile Court] Act." 705 ILCS 405/1-2(2) (West 2016). Accordingly, the Juvenile Court Act "shall be liberally construed to carry out the foregoing purpose and policy." *Id.* § 1-2(4). Here, the delegation of authority was signed by the person responsible for intact family services for the northern region of One Hope United, and it is records for such services which were admitted into evidence at the hearing. We therefore can find no error in the juvenile court's admission of these records pursuant to section 2-18(4)(a).

¶ 27   Moreover, even leaving aside the State's exhibits, there was sufficient evidence to support the juvenile court's findings of abuse and neglect. As noted, both minors were found (1) abused due to a substantial risk of physical injury under section 2-3(2)(ii) of the Juvenile Court Act and (2) neglected due to an injurious environment under section 2-3(1)(b) of the Juvenile Court Act. Under the Juvenile Court Act, an abused minor includes one whose parent or other person responsible for his welfare "creates a substantial risk of physical injury to such minor by other than accidental means which would be likely to cause death, disfigurement, impairment of emotional health, or loss or impairment of any bodily function." 705 ILCS 405/2-3(2)(ii) (West 2016). A neglected minor includes one "whose environment is injurious to his or her welfare." *Id.* § 2-3(1)(b). While this term cannot be defined with particularity, "it includes the breach of a parent's duty to ensure a safe and nurturing shelter for his or her children." *In re Z.L.*, 2021 IL 126931, ¶ 89.

¶ 28   With respect to both of A.W. and Zya.T., the juvenile court found abuse and neglect where "parents were involved in a dispute and left the home, leaving minors [Zah.T.] and [Zay.S.] alone. Mother has prior indicated report for cuts/welts/bruises." Under the theory of anticipatory neglect, the State seeks to protect "not only children who are the direct victims of

11

neglect or abuse, but also those who have a probability to be subject to neglect or abuse because they reside, or in the future may reside, with an individual who has been found to have neglected or abused another child." *In re Arthur H.*, 212 Ill. 2d at 468. Accordingly, abuse of a sibling may be evidence of neglect based on an injurious environment. *In re S.S.*, 313 Ill. App. 3d 121, 127 (2000); see also 705 ILCS 405/2-18(3) (West 2016) ("proof of the abuse, neglect or dependency of one minor shall be admissible evidence of the issue of the abuse, neglect or dependency of any other minor for whom the respondent is responsible").

¶ 29      In this case, the abuse and neglect findings with respect to the younger two children may be used to support similar findings for the older two children. While there is no *per se* rule that neglect of one child conclusively establishes the neglect of another child in the same household (see *In re Arthur H.*, 212 Ill. 2d at 468), here, such a finding is appropriate. All four children were living in the same home at the time, and respondent's conduct occurred close in time to the filing of the petition for adjudication of wardship. Thus, this is not a case in which the previous abuse or neglect occurred long ago or had no connection with the minor's current living situation. See, *e.g.*, *In re S.S.*, 313 Ill. App. 3d at 128 (past abuse occurred almost two years before the minor was born); *In re Edricka C.*, 276 Ill. App. 3d 18, 29-31 (1995) (past abuse occurred several years earlier, and there was no indication minors were abused or neglected). Here, respondent and J.S. had an altercation in the presence of young children, which was sufficiently heated to result in the breaking of a telephone and the calling of police, and both adults left the home, leaving a two-year-old child and a four-year old child unattended until they were discovered by police. Respondent also reported to the DCFS investigator that J.S. had "kicked down her door" three months earlier. Combined with the prior indicated report of cuts, welts, and bruises, the evidence presented was sufficient to establish the abuse and

neglect of A.W. and Zya.T., even without the use of the State's exhibits, and we therefore affirm the juvenile court's findings.

¶ 30    As a final matter, as noted, the record on appeal demonstrates that there were inconsistent references throughout with respect to which children were left at home. The parties all agree that the children who were discovered unattended at respondent's home were Zah.T. and Zay.S., the youngest two children. At times, however, the witnesses and the juvenile court referred to Zya.T., not Zah.T., as one of those children. Most problematically, this error occurs in the juvenile court's adjudication orders. While this scrivener's error does not prevent us from considering the merits of respondent's appeal (see *In re Marriage of Crecos*, 2015 IL App (1st) 132756, ¶ 18), at the request of the parties, we nevertheless remand the matter to the juvenile court for the limited purpose of correcting the adjudication orders *nunc pro tunc* to reflect that it was Zah.T. and Zay.S. who were left at home, not Zya.T. and Zay.S.

¶ 31                                    CONCLUSION

¶ 32    The juvenile court's adjudication orders finding A.W. and Zya.T. to be abused and neglected is affirmed, where the evidence was sufficient to establish abuse and neglect and any evidentiary error was harmless. The cause is remanded to the juvenile court for the limited purpose of correcting the adjudication orders to properly reflect the correct names of the minors discovered unattended at respondent's residence.

¶ 33    Affirmed; cause remanded with instructions.