2026 IL App (1st) 242045-U

SIXTH DIVISION

June 26, 2026

No. 1-24-2045

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| LATASHA COOK, individually and as independent administrator for the estate of DE'ARYIAH COOK, deceased, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) ) | |
| v. | ) ) | No. 19 L 6674 |
| NATASHA NOEL, M.D., et al., | ) ) | Honorable Gerald Cleary, |
| Defendants-Appellees, | ) ) ) | Judge, presiding. |
| DEANGELO STATAM, heir of DE'ARYIAH COOK, | ) ) | |
| Respondent-Appellant. | ) | |

PRESIDING JUSTICE C.A. WALKER delivered the judgment of the court.
Justices Hyman and Gamrath concurred in the judgment.

**ORDER**

¶ 1   ***Held:***   We vacate and remand the circuit court's order regarding allocation of settlement proceeds and dependency because the procedure the court employed constituted an abuse of discretion.

¶ 2   This case arises from an underlying suit for wrongful death and survival brought by the appellee LaTasha Cook as administrator of her daughter De'Aryiah Cook's estate. De'Aryiah passed on the ninth day of her life. The case settled, and LaTasha filed a petition to allocate the settlement funds between the wrongful death and survival claims, and for the circuit court to make the dependency determination for each heir for distribution of those funds allocated to the wrongful death claim.

¶ 3   Throughout the case, LaTasha acknowledged that De'Aryiah's heirs included (1) herself; (2) De'Aryiah's father, appellant DeAngelo Statam Sr.; and (3) - (5) DeAngelo Sr.'s three children, DeAngelo Jr. (an adult), and his two minor children, a boy and a girl. LaTasha served notice of the petition, with a presentment date of March 18, on DeAngelo Sr. on March 6, 2024. DeAngelo Sr. hired counsel on March 15, a Friday. At the Monday, March 18 hearing, the court heard testimony from DeAngelo Sr. and LaTasha, then entered an order allocating 100% of the settlement proceeds to the wrongful death claim, with a dependency finding of 95% to LaTasha, and the remaining 5% to DeAngelo Sr.

¶ 4   DeAngelo Sr. filed a motion to reconsider, which the circuit court granted, citing insufficient notice of March 18, 2024, hearing to the minor children. At the second hearing, the court denied DeAngelo Sr.'s attempt to testify again, despite his protestation that the initial hearing had been "without notice." Following the hearing, the court entered a new order again allocating 100% of the settlement proceeds to the wrongful death claim, but updating the dependency determination to 87% for LaTasha, 10% to DeAngelo Sr., and 1% each to DeAngelo Sr.'s children. DeAngelo Sr. appealed, arguing that the court employed an improper procedure by forcing him to testify on

March 18 and refusing to allow him to supplement the testimony at the second hearing; should have appointed a Guardian Ad Litem (GAL) to represent the minor children's interests; and substantively erred in its allocation and dependency findings. For the reasons below, we find the procedure the court employed to reach its decisions constituted an abuse of discretion, and accordingly we vacate its final allocation and dependency order and remand for a new, full hearing.

¶ 5                                                        BACKGROUND

¶ 6     Cook filed her initial complaint on June 17, 2019, which she amended twice. In the operative complaint for this appeal, her third amended complaint, she alleged that De'Aryiah was born on June 11, 2017, at St. Anthony Hospital in Chicago. The next day, her treaters performed a "neonatal examination and assessment" and concluded she was "a healthy newborn," and she was discharged. De'Aryiah had a pediatric primary care visit three days later. On June 17, 2017, De'Aryiah presented to the emergency room with "severe respiratory acidosis," which included a "history of not feeding, irritability and screaming intermittently." She died the next day of "severe coarctation of the aorta and multi system organ failure." Cook brought claims against De'Aryiah's treating physicians at the hospital and pediatrician's office, their employers, and the facilities, including the two claims relevant here: (1) wrongful death and (2) survival. Respecting the survival action, Cook alleged that De'Aryiah endured "great pain and suffering before her death."

¶ 7     In January 2024, LaTasha settled with all defendants, and the circuit court continued the matter for "presentation of petitions for approval of settlement, approval of attorneys' fees and costs, determination of degree of dependency," and "allocation of proceeds of settlement."

¶ 8     On March 5, 2024, Latasha filed a petition to settle cause of action and for approval. Therein, she relayed that the full settlement amount was $3.4 million, with just over $2.1 million to be distributed amongst the five heirs after fees and costs. The notice of motion for the petition,

3

dated March 5, stated in relevant part, "Please take notice that on March 18, 2024, at 9:00 am, we shall the present the attached Petition to Settle Cause of Action for Approval." DeAngelo Sr. was not on the service list.

¶ 9 New counsel for Latasha, Bruce Pfaff, entered the case on March 8, 2024. Latasha filed a memorandum in support of the petition on March 11, 2024, which relayed that she and De'Angelo Sr. were not married and did not live together. He lived in Wisconsin and had not visited De'Aryiah during her life. The two had not planned on raising De'Aryiah together. His children had no relationship with LaTasha. On allocation, she argued, "Based on the evidence, there was likely no damages compensable under the Survival Act. It was posited that the fetus may have felt pain. It was posited that the decedent may have felt pain before her death, but she was essentially unconscious then." Accordingly, LaTasha proposed that the full allocation go to the wrongful death claim. On dependency, she proposed she be allocated "at least 95%" of the settlement proceeds based on the "strong likelihood that the father, DeAngelo, and his children would not have had meaningful relationships with De'Aryiah and that [LaTasha] and [LaTasha] alone would have raised her daughter." LaTasha attached an affidavit to the petition attesting to these representations. The notice of filing did not list DeAngelo Sr.

¶ 10 On March 20, 2024, the circuit court entered an order that, in relevant part, (1) approved the settlement, (2) allocated 100% of the funds to the wrongful death claim, and (3) resolved the dependency issue by assigning LaTasha 95% of the proceeds, DeAngelo Sr. 5%, and DeAngelo Sr.'s children 0%. No transcript or bystander's report for the accompanying hearing that day appears in the record on appeal. The order noted only in preface to the substantive findings:

> "This cause coming to be heard on Plaintiff's Petition to Settle Cause of Action,
>
> Allocation and Distribution, due notice being given to the parties, personal service being

made on each heir, their respective attorneys having appeared in open court, additional submissions provided to the court having been filed and served *** the Court having conducted a hearing allowing all who wanted to be heard to testify, and the Court being fully advised in the matter…"

¶ 11    On March 21, 2024, attorneys Anthony D. Andrews and Brandon-Bell Booker entered their "initial" appearances on behalf of DeAngelo Sr. and DeAngelo Jr. The appearance noted the two also represented DeAngelo Sr. in his capacity as Next Friend of his two minor children.

¶ 12    Six days later, on March 27, De'Angelo Sr. and his children, referring to themselves collectively as "the Heirs," filed an emergency motion to stay the March 18, 2024 order. Therein, they contended that only DeAngelo Sr. received any notice of the March 18 "presentment" date. DeAngelo Sr. received that notice on March 6, 2024, and immediately sought to procure counsel, hiring the attorneys on the evening of Friday, March 15, 2024. Mr. Bell-Booker contacted LaTasha's attorneys who preceded Mr. Pfaff that same day, who responded and forwarded Mr. Bell-Booker's contact information to Mr. Pfaff. On Sunday March 17, 2024, Mr. Pfaff emailed Mr. Bell-Booker the supporting memorandum for LaTasha's petition. At the proceeding on March 18, the Heirs contended, Mr. Bell-Booker requested leave to enter an appearance and file a memorandum in opposition to LaTasha's, but the circuit court summarily denied the request without explanation. Instead, the court required "an evidentiary hearing on the day of the presentment of the petition, where no notice was given to any of the heirs, and 2 of those heirs are minors, and ultimately ruled 100% in agreement with" LaTasha's memorandum.

¶ 13    On April 8, 2024, the Heirs filed a motion to reconsider the March 18 order, reiterating the arguments in the emergency motion. The motion to reconsider indicated the court granted the emergency stay on March 29, 2024, though no corresponding order appears in the record on

appeal). The motion emphasized that the minor children were given no notice or opportunity to request that the court appoint them a GAL. The Heirs also contested LaTasha's representation that De'Aryiah did not experience pain and suffering, contending that LaTasha admitted to this fact in her third amended complaint. The Heirs also challenged the circuit court's conclusion that LaTasha deserved 95% of the proceeds in comparison to DeAngelo Sr.'s 5%.

¶ 14 Via an attached affidavit, DeAngelo Sr. averred that at the March 18, 2024 hearing, he testified (1) he was on the way to the hospital when LaTasha decided to take De'Aryiah off of life support; (2) he asked LaTasha to wait for him to arrive so he could see De'Aryiah before she passed, but this did not occur; and (3) he paid for De'Aryiah's cremation. Additionally, in the attached affidavits of Bethany Solomon (mother of DeAngelo Jr. and the minor son) and Stacie Arrington (mother of the minor daughter), the Heirs represented that DeAngelo would have been "a great father" to De'Aryiah, as he was to his other three children. The Heirs further argued that De'Angelo's three children "would certainly have had meaningful relationships with De'Aryiah and LaTasha Cook would not have raised her alone." Again, no report of proceedings or bystander's report from March 18 was included with the motion to reconsider.

¶ 15 In another attached affidavit, Bell-Booker relayed that at the March 18 hearing, he initially asked for leave to file his appearance and "prepare a memorandum in support of disbursement allocation on behalf of my clients," but the circuit court "immediately denied my ask without explanation." The court then asked if he had any witnesses to present, and "Without proper preparation, I stood up in front of the court and began to question DeAngelo Statam Sr. for his testimony." Bell-Booker then averred to the substance of Statam's purported testimony. He relayed he did not cross-examine LaTasha "because I was not prepared to be in a trial setting."

6

¶ 16   LaTasha filed a response to the motion to reconsider, wherein she argued that DeAngelo Sr. failed to refute LaTasha's core representation regarding who would be the primary caregiver for De'Aryiah or if she experienced conscious pain and suffering. LaTasha also contended that the affidavits the Heirs attached were "hearsay" and could not substitute for court testimony. On the notice issue, LaTasha argued, "There was no motion to continue the hearing, either in writing or verbal."

¶ 17   The circuit court granted the motion for reconsideration, stating in the written order, "the motion is granted and that portion of the order of 03/20/24 allocating funds between the Wrongful Death Act and the Survival Act along with the allocation of funds among the heirs under the Wrongful Death Act is vacated. The Court finds that the Estate of De'Aryiah failed to give adequate notice of the 03/18/24 hearing to the minor heirs."

¶ 18   The Heirs filed a memorandum in support of a new proposed allocation, reiterating the arguments from the emergency motion and motion to reconsider.

¶ 19   On June 17, 2024, the circuit court held a new allocation and dependency hearing, and entered a written order on June 18 finding 100% of the proceeds would again be allocated to wrongful death, with a dependency determination of (1) 87% to LaTasha, (2) 10% to DeAngelo Sr., and (3) 1% each to DeAngelo Jr. and the two minor children. The order continued, "the amount distributable shall be accounted for and administered by the probate division."

¶ 20   At the June 17 hearing, the minor children did not appear in person and did not testify. The circuit court began the proceeding by stating, "We already had a hearing on this. So, I've already heard from Latasha Cook. And I've also heard from DeAngelo Statam Sr." The court then asked the Heirs' counsel whether he had any other witnesses. Counsel responded, "I would actually like to call both of the DeAngelos. In fact, your Honor, that was a hearing that was done without notice,

as the Court knows. And so there was no preparation for them, et cetera." The court responded, "I've heard the testimony. I'm not gonna have [DeAngelo] Sr. testify again. *** You don't get a second bite at the apple."

¶ 21 DeAngelo Sr.'s counsel also raised the issue of whether the circuit court should consider appointing a GAL for the minor children. The court responded, "Well, isn't Mr. Statam, Sr. the guardian?" to which counsel said, "He is not a legal guardian, your Honor." The court ultimately refused to appoint a GAL, explaining, "So you're saying a parent can't make decision on behalf of the children? *** I rule we have jurisdiction. Next."

¶ 22 De'Angelo Jr. testified that he did not know LaTasha was pregnant with De'Aryiah before she passed. Solomon and Arrington testified as to DeAngelo Sr.'s parenting and his relationship with his children, along with the children's relationship with each other. After testimony, the circuit court asked DeAngelo Sr.'s counsel, "Do you have any proof that De'Aryiah experienced conscious pain and suffering from June 15th to June 18th of 2017?" to which counsel responded, "I don't have proof of that, your Honor."

¶ 23 The court then made its findings, explaining, "There's no allegations and nothing apparent in the allegations in the complaint that there was conscious pain and suffering. There just isn't. *** So, because there's no evidence, the Court can't allocate anything to the Survival Act." Concerning dependency, the court stated, "the fact of the matter is not that this was really a known type of relationship resulting in the birth of De'Aryiah." The court expressed doubt as to whether DeAngelo Jr. and the minor children would have been close with De'Aryiah, stating "because of the distance between the families, and the family dynamic *** I'm just not convinced *** [the relationship was] going to be significant."

¶ 24   On July 18, 2024, DeAngelo Sr. moved for reconsideration of the June 18, 2024, order, contending the circuit court failed to correct the issues arising from the March 18 hearing and instead compounded them by not permitting DeAngelo Sr. to testify at the subsequent hearing on June 17, 2024. He contended this constituted a due process violation, citing *In re Estate of Stinnette*, 2024 IL App 2d 230174, ¶ 34. He also contended that a GAL should have been appointed for the minor children and challenged the court's allocation and dependency determinations. DeAngelo Sr. attached LaTasha's deposition to the July 18 motion to reconsider, in which she described De'Aryiah struggling to breathe, not eating, and "constant[ly] crying."

¶ 25   The circuit court denied the motion to reconsider on September 16, 2024. This appeal followed.

¶ 26                               JURISDICTION

¶ 27   The circuit court denied DeAngelo Sr.'s motion for reconsideration of its July 18, 2024 order determining the rights of De'Aryiah's five heirs to the settlement proceeds on September 16, 2024, and DeAngelo Sr. filed his notice of appeal on October 15, 2024, giving this court jurisdiction pursuant to Illinois Supreme Court Rules 303 (eff. July 1, 2017) and 304(b)(1) (eff. Mar. 8, 2016).

¶ 28                                 ANALYSIS

¶ 29   On appeal, DeAngelo Sr. claims the circuit court erred by (1) forcing him to testify on March 18, 2024, then refusing to allow him to offer additional testimony on June 17, 2024, (2) not appointing a GAL for the minor children, and (3) making improper allocation and dependency findings.

¶ 30   We begin with DeAngelo Sr.'s claim that the procedure the circuit court employed in making the allocation and dependency findings was improper because it forced DeAngelo Sr. to

proceed on March 18, 2024, then denied his request to testify again on June 17, 2024. Neither party disputes that some hearing was required for the court to determine the allocation between the wrongful death and survival claims, and the dependency determinations within the wrongful death claim. This is consistent with both the applicable statute and the case law. See Pub. Act 103-514, § 5 (eff. Aug. 11, 2023); *Muro v. Abel Freight Lines, Inc.*, 283 Ill. App. 3d 416, 419 (1996). What that hearing entails, however, and "the fairness and reasonableness of the apportionment proceedings," are matters "within the trial court's discretion." *Muro*, 283 Ill. App. 3d at 419. We thus review the procedure employed by the circuit court here for an abuse of discretion, which occurs when a court's decision is "arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court." *Haage v. Zavala*, 2021 IL 125918, ¶ 40.

¶ 31    The record shows that DeAngelo Sr. received notice of the Monday, March 18 court date on March 6, and then hired his attorneys on Friday, March 15. His attorneys did not receive the petition for allocation until Sunday, March 17. The next day, the parties appeared along with counsel; DeAngelo Sr. and LaTasha testified; and the circuit court entered an order allocating the settlement amount 100% to the wrongful death claim, with a 95% to 5% allocation of the funds to LaTasha. There is no report of proceedings or bystander's report in the record for this hearing.

¶ 32    DeAngelo Sr.'s counsel then, days later, filed an appearance on behalf of DeAngelo Sr., DeAngelo Jr., and the minor children along, with a motion for reconsideration of the March 18 order. In the motion, the Heirs argued, in relevant part, that their counsel had requested that the circuit court permit him time to enter an appearance and file an allocation proposal, but the court summarily denied the request, then forced DeAngelo Sr. to proceed that day with no chance to prepare. The motion requested that DeAngelo Sr. be permitted to testify again after proper preparation and further noted that proper notice had not been supplied to the minor children.

DeAngelo Sr.'s counsel attached an affidavit swearing that he made the continuance request. In her response, LaTasha contended that "no oral or written motion for continuance" was made. The circuit court granted the motion to reconsider and vacated its order, but on the express basis that the minor children had not been given proper notice of the March 18 hearing. At the subsequent allocation hearing on June 17, the court did not permit DeAngelo Sr. to testify.

¶ 33   On this record, we find the circuit court abused its discretion by requiring DeAngelo Sr. to proceed with the hearing on March 18 when his counsel had not even had time to enter his appearance, let alone prepare for a hearing. The court then compounded the issue by not permitting DeAngelo Sr. to testify on June 17. Under *Muro*, the appropriate procedure to employ for this case was within the court's discretion. *Muro*, 283 Ill. App. 3d at 419. Once the court decided testimony was necessary, however, it was unreasonable for the court to proceed with that testimony on Monday March 18, given that DeAngelo Sr.'s counsel only joined the case on Friday March 15 and only received LaTasha's petition on Sunday March 17. It was incumbent on the court to permit the parties reasonable time to prepare to testify and to procure those witnesses, and upon learning that counsel was hired on the last workday before the hearing and had not yet entered an appearance, the court should have delayed the hearing. It did not, and when prompted about this issue by counsel in the motion for reconsideration, the court limited DeAngelo Sr. to only the testimony of March 18, despite otherwise re-opening evidence. Accordingly, we vacate the court's order of June 18 and remand for a new, comprehensive allocation and dependency hearing, providing an opportunity for the parties to testify and present evidence after reasonable preparation, and for the court to then make its ruling.

¶ 34   LaTasha's primary argument is that because there is no report of proceedings or bystander's report from March 18, DeAngelo Sr. cannot point to a specific portion of the record on appeal

conclusively demonstrating that his counsel in fact asked for a continuance on March 18. LaTasha argues this is fatal to DeAngelo Sr.'s procedure claim, per *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984).

¶ 35 We acknowledge that the absence of a transcript or bystander's report from the March 18, 2024 hearing is problematic. We find, however, that the record contains sufficient indication of what occurred below to demonstrate that the circuit court's conduct on March 18 constituted an abuse of discretion. Whether or not DeAngelo Sr.'s counsel made an official request for a continuance on March 18, there is no disputing the condensed timeline of retention (Friday the 15), receipt of the petition (Sunday the 17), and the fact that the court required counsel to conduct the full hearing (Monday the 18), all without having an appearance on file. Quite simply, DeAngelo Sr.'s counsel could not have properly prepared the case given this timeframe, making the court's decision to proceed with the hearing on March 18, and refusal to correct its erroneous decision on June 17, unreasonable and subject to reversal. See *Ward*, 282 Ill. App. 3d at 431.

¶ 36 In the context of reviewing whether a lower court's procedural decisions constituted an abuse of discretion because it refused to permit a continuance request, this court has explained that "a decisive factor is whether the party seeking the continuance has shown a lack of diligence in proceeding with the cause." *In re Marriage of Ward*, 282 Ill. App. 3d 423, 430-31 (1996). We find this principle relevant here, and based on the record, neither DeAngelo Sr. nor his counsel could be credibly accused of lacking diligence. DeAngelo Sr. procured counsel within nine days of being served with notice of LaTasha's petition, while his counsel was hired on a Friday, received the relevant petition on a Sunday, then had to appear in court on Monday. There is no dispute over this timeline. Moreover, there is no dispute that DeAngelo Sr.'s counsel promptly moved for reconsideration after the entry of the March 18 order, relaying this timeline and requesting a chance

to conduct a new hearing after adequate preparation. Thus, even on the incomplete record available to us, there is no doubt that DeAngelo Sr. raised an issue of his lack of preparedness at the March 18 hearing before the circuit court made its final determinations on June 17 and 18 even if the record does not definitively show his counsel asked for a continuance during the March 18 hearing. And, moreover, there is no doubt the court rejected the opportunity to correct the issue and instead chose to rely on evidence procured at a fundamentally flawed proceeding in making its allocation and dependency findings.

¶ 37    In so finding, we make no comment on the substance of the circuit court's allocation and dependency decisions, or what those ultimate decisions should be after a proper hearing. We find only that the court's decision to take testimony on March 18, then refusal to correct this mistake on June 17, so infected the whole procedure that a new procedure, with new testimony from all witnesses, is required.

¶ 38    LaTasha argues that DeAngelo Sr. waived his claim by not making an offer of proof at the June 17 hearing as to what he would have testified to had the circuit court permitted it. This body of law is inapplicable to the current situation, however, because the substance of the testimony was not unknown and is not the issue at stake in this appeal. See *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 495 (2002) ("[A]n offer of proof is not required where it is apparent that the trial court clearly understood the nature and character of the evidence sought to be introduced.").

¶ 39    Finally, apart from the procedural issues arising from the March 18 hearing, the parties also dispute whether the circuit court should have appointed a GAL for the minor children. See Pub. Act 103-379, § 20 (eff. July 28, 2023) (amending 705 ILCS 405/5-610(1)). Given our resolution of the first issue, we do not reach this issue. On remand, it will be incumbent on the parties to determine how to proceed, including whether DeAngelo Sr.'s counsel again attempts to represent

the minor children. We note, however, that a circuit court has an independent duty to protect the best interest of minor children, regardless of whether a party requests that a GAL be appointed. See *Will v. Northwestern University*, 378 Ill. App. 3d 280, 293-94 (2007).

¶ 40                                    CONCLUSION

¶ 41    The circuit court held a hearing when one party could not have been ready and then forced that party to rely on the testimony from that initial hearing despite granting reconsideration. This procedure was arbitrary and unreasonable and necessitates a new hearing. Accordingly, we vacate the court's June 18 order and remand for proceedings consistent with this order.

¶ 42    Vacated and remanded.